Michael Cruz v. Scott Semple Good morning, Your Honors. May it please the Court, Stephen Finucane, Assistant Attorney General for the Defendant Appellants, we respectfully request that Your Honors reverse the decision of the District Court insofar as it denied the motion to dismiss below. If I may jump right into substance on the qualified immunity issues, the constitutional rights at issue are properly defined as this. The right under a theory of deliberate indifference of an inmate to compel prison officials to test a prison for radon under proper protocols and, if necessary, remediate the prison for radon under proper protocols. And that is important. It's the scope, the constitutional contours of the scope of the right, and the closest authority we have to that is the Supreme Court's most recent decision on safety protocols in a prison and qualified immunity analysis. That's Taylor v. Barks. It's the closest thing we have to assessing what high-ranking wardens, correctional officials must do and what they should know they're required to do, not by statute, not by methods of best practices, but as a constitutional mandate and minimum. And what's more, in Taylor v. Barks, they — the Court even went so far to say you need authority, constitutional precedent, to shed light on the constitutional mandates in the protocol context. Another decision that sheds light on some of this is this recent — this Court's recent decision in the almighty Supreme Court, Allah!, where there was actually analysis of a specific Department of Correction practice policy and the constitutional implications of that in the qualified immunity context. And what's important about this, what both the plaintiffs and the district court have erred in their analysis is, there very well may be a claim stated. They very well have — may have alleged the elements of deliberate indifference and alleged a prima facie case. We've never taken a position on that. We were ordered not to. But in Allah!, every single judge, all — What do you mean you were ordered not to? Below in the procedural — early procedural stages, there was an agreement and a subsequent order that we would only address immunities in the briefing at the outset. In Allah!, all four judges, the district judge and the panel from this circuit, everyone agreed that there was a constitutional violation. There actually was one in that case. There was still qualified immunity, entirely separate analysis from whether there's a claim stated and whether there's immunity. We don't have anything from this circuit, from the Supreme Court at all addressing the implications from a constitutional standpoint of Radon in prison. We certainly don't have anything addressing what testing protocols would be required when, how rigid, what follow-up testing would need to look like from a constitutional mandate. We don't have anything like that. Is there — is there — there is Supreme Court authority that there is a right not to be subjected to an unreasonable risk of future health? Yes, Your Honor. There is Supreme Court case law that says the Eighth Amendment encompasses the right to be protected from future harm or some sort of substantial risk of future harm. The important thing about those cases, obviously, I think the most central one is Helling, which seems to be the most at issue in this case. That is stating a claim analysis. That is, have you alleged a claim to either pursue an injunction or to file a complaint and state a claim? The immunity thing is really an entirely separate analysis. And that happened in Helling. The defendants in Helling were entitled to qualified immunity for the damages claims. So to the extent we go more down the Helling road than we do the Taylor road, which we would obviously urge the Taylor road is more recent and more apt, but if we went more down Helling than Taylor, the Helling road is we have a newly recognized right here, a newly recognized problem that is unique. It's materially unique as alleged in the complaint. The actual ---- What are you referring to, the radon risk? Yes, Your Honor. And that is important in this case. The actual complaint itself is crystal clear in paragraph 72 through 74. They allege radon is materially different than environmental tobacco smoke. It's imperceptible. More important, it's naturally occurring. And most important for this appeal, there's no constitutional authority on it. Nothing. But is there a difference in your argument as between defendants who are charged with violations before the 2013 testing and then after the 2013 testing? There is certainly a difference in what they're alleged to have done or not done or known or not known. So, yes, there is a difference in the actual factual allegations alleged against them. We maintain they are still ---- they're all still immune, perhaps for slightly different reasons, though. So before 2013, there's actually no allegation that they did something improper. The claim is that they didn't test, they didn't remediate, they didn't establish  One of the biggest problems with---- Sotomayor, let me not, rather than you lumping those together, before we get to remediation, they didn't test. The claim there before 2013, as I understand it, is that defendants knew or should have known that Newtown had an above-average radon level, which I understand is true of most of the State of Southern Connecticut or at least the southern part of it. So the question is whether it was clearly established that with knowledge that you were in an area with above-average radon levels, you had to test, right? And you're saying that obligation as a matter of constitutional indifference to safety was not clearly established? Absolutely, Your Honor. Okay. But after the 2013 test, where they get the concentration above 4 in, I think it's 58 of 117 rooms. Is that right? I believe it. Okay. What's your argument for why the law wasn't clearly established after that point? Threefold, Your Honor. First, that time period, they're actually still alleged to have done something now, right? So we do actually have a material change that arguably would cut both ways. We maintain it's more in our favor, which is they did implement testing and protocols, including in the complained-about areas, including in compliance with the school statute, which is what prompted the testing in the first place. So they did actually test. Now we're squarely in Taylor v. Barksland. Now we're debating which protocols were sufficient and which weren't. Also they test prisoners' rooms at that time. I thought the only testing was in a discrete area and that that part of the complaint is that knowing there was this problem in the areas that were tested, it showed deliberate indifference not to test the prisoner areas. That is the allegation, Your Honor. Okay. So if that's the claim, what's your qualified immunity argument as to that? Twofold. First, we're still we still have to separate whether it states a claim from whether it's clearly established. So at that time, there is still no radon precedent, and there's still very little of anything about environmental concerns in a prison. What's more is that time is actually critical from a standpoint of jurisprudence, which is 2011, 2012, 2013, this Court and the Supreme Court start issuing a flurry of qualified immunity decisions. Exemplifying over and over again, sometimes as many as three a term from the Supreme Court, narrowly construed, narrowly construed, we need specificity. So while this is all going on, and while they are implementing some testing in one area where the actual complaint was about and not another area, at that point, the precedent at that time, which is how we have to look at it, gives those correctional officials basis to believe you would actually need some radon-specific authority at that time. The precedent becomes even more clear then, and then it's confirmed a couple years later in Taylor v. Barks. Now we're debating which safety protocols are constitutionally sufficient, which aren't, and we're doing it without any guidance. We're stumbling through a complete abyss of constitutional darkness at that point in the environmental context. Sotomayor, let me assume just for argument's sake that we're not totally persuaded by that, do we still have to consider who among the defendants would have been authorized and responsible to order further testing and did not do it, and which ones did not? Because it seems to me we have a lot of defendants with different responsibilities. I don't know whether you've drawn that distinction for us in your papers. So if I may answer, I think, two questions in there, Your Honor. Certainly, yes, the first one. It does matter. Qualified immunity is a defendant-specific defense. And a lot of defendants in a lot of years here to cover in our briefing, we tried the best we could. But we would agree with Your Honor that there are certainly, according to the allegations, four, three, maybe four defendants from 2013 on, Zarenda, Semple, Link, and Warden Falcone, no one before that is really alleged to have implemented inadequate testing in an area, one area, not another. Everyone before that seems to have just been alleged to have failed to do something. So those four defendants are after 2013. But even there, there is still a problem of, okay, maybe they're alleged to have tested one area, not another, and maybe they should have known there is a risk, but we still don't have a constitutional authority to help them guide through that. And we do have to look at this as these are not legal scholars. If judges and lawyers can disagree about this, even if correctional officials can disagree about this, they're immune. Sotomayor. Now that you mention it, go ahead. What do you say is what would be sufficient? From a precedent standpoint? To overcome qualified immunity. In this case, we would need a precedential decision from this Court of the Supreme Court or a robust consensus from other circuit courts of appeals. That addresses the constitutionally required testing and remediation protocols of a prison for radon. Radon-specific. Radon-specific. Because it's alleged to be so materially different, including naturally occurring and imperceptible. It's not a cell assignment where someone is blowing five packs of smoke in a cellmate's face. It's something that could just be there and no one would know or could know. And at the very least, and we don't concede this, but we don't even have a decision about some other naturally occurring carcinogen that can't be perceived either. We have nothing about that. The material differences alleged in the complaint about radon have to be considered both ways. I recognize in your position you have multiple roles, one of them being, in a sense, offering advice to your clients in futuro. So assume for the argument, my hypothetical is that you prevail on qualified immunity. What does that mean or what does that suggest for the future? That is, at that point, are all of your clients on appropriate notice so that going forward there would be no immunity in these circumstances? Possibly. And I hate to do the lawyer's hedge here, but it would depend. But it would depend on the opinion. Certainly, I think if there was, like Taylor v. Barks, just a decision saying not clearly established, then actually no. If it was more what the amicus is actually respectfully begging this Court to do and how it ended its footnote of its brief, it wants this Court to do a step one Pearson analysis in addition to step two clearly established. The amicus wants this Court to opine on the scope of the right in question and define  the scope of the right in question. And that very well could and probably would. And certainly we would advise our clients in accordance with any precedence from this Court. But that gets us to your other claim. I mean, we have parties sued in their official capacity. Yes, Your Honor. Who seek to dismiss not on qualified immunity, because that wouldn't pertain, but on sovereign immunity. And that pertains even to the plaintiff's request for injunctive relief. And it seems to me, are you not prepared to do whatever testing, remediation, whatever they're seeking as part of their injunctive relief? I mean, to get to the bottom line, can't you all settle this in terms of what steps you're going to take to avoid future injury? Then I understand there's the question of constant medical care. But let's deal with the conditions in the prison. You can't work out something on that? So three responses to Your Honor's question, if I may. One, certainly yes, if we ended back down before the district court with qualified immunity dismissing the individual clients and only the official capacity clients being at that point essentially going through class certification process. In that context, certainly we could sit down with the plaintiffs and discuss that. But that's not what you want. You want us to dismiss the claim. And one of the reasons. And as I said, there are two parts to it. One is seeking facility testing, and the other is the providing prospective medical care from people who have been incarcerated there. I want you to address the first. Certainly. Okay. So, yes, we are prepared to do the testing and or remediation that would be deemed appropriate by whoever. So where does that leave us? That's one of the basis for our ‑‑ it's the primary basis for our claim that sovereignty bars the testing of the facility for radon relief portions of the claims because there is a directive, and it's not alleged in the complaint, but the record has a directive, an updated directive from the commissioner of correction that not only provides all the relief sought from a testing of a facility radon perspective in the complaint, it goes way broader. It mandates the entire state. You could resolve that with the plaintiffs and then the claim would be moot. And, Your Honor, that was our biggest problem with the district court's ruling was the plaintiff and the district court went down in an analysis of mootness and really the only analysis we got in the decision was confined to a footnote and it was an issue of whether there's an exception to mootness. Our argument is not mootness. Even if we presume that everything is justiciable still, there is the ex parte young exception to the Eleventh Amendment hasn't been satisfied because we must presume ‑‑ the only way to read the complaint fairly is to presume that the relief they are seeking would remedy the alleged ongoing violation. We have a mandated policy from the commissioner to test every facility in the State now on a pretty rigid cycle that's much more rigid than what they are seeking in the complaint. So there can't be an ongoing violation. It's not a mootness issue, or at least not yet. It is an Eleventh Amendment problem. If they want to litigate that, that can be litigated if anywhere in State court, which is maybe the biggest problem under the Eleventh Amendment, is the Pennhurst problem, not just for medical, but I don't think there is a dispute and I certainly don't think there can be a dispute that the State law claims under the Connecticut Constitution that are seeking injunctive relief must be dismissed. That was error. I don't think that can be contested here today. Thank you, Your Honors. May it please the Court, my name is Lori Welch Rubin and I represent the plaintiff respondents in this matter. I have to immediately take issue with the fact that the scope of the right as defined by the State is, in fact, not the scope of the constitutional right that we have placed at issue, nor is it the one that Judge Arterton found.  I think it's important to note that Helling sets out, and there was a recent 19th, there's a 2019 Ninth Circuit decision, Hines v. Yusuf, that says this. Helling sets out the framework for Eighth Amendment condition of confinement claims about involuntary exposure to environmental hazards. How does that help you, though, before the 2013 testing? I mean, in Helling, there was actual exposure. Not only was it ongoing, it was you could see it. So here, before 2013, I gather your claim is based entirely on the fact that this area in Connecticut is known to have radon issues. Not the prison, this area. No. So it begins with the fact that, you know, and radon, just to set the stage, radon is the second leading cause of lung cancer. It is, in fact, more likely to cause lung cancer than environmental tobacco smoke. The radon levels in this building were the equivalent of smoking a pack of cigarettes a day to two and a half. Stay with me on prison. No, I will, Your Honor. And what we're going back to is, and this may get at where the actual classes that are certified are, but what the complaint sets out in great detail is not only did you build this at a time when radon was on the Toxic Substance Control Act as of 1988, and there was a prison built at the same time, a Federal prison in Pennsylvania which has problems with radon. They tested for it. It's what you do. And then you remediate it as part of the construction process, and you don't have an issue. And thereafter you're doing this, but I don't understand how Helling helps you. We're looking at this. And thereafter, there were a number of occasions where they were on notice, high uranium levels in the water that were astronomical. The testing for the school, the statute in Connecticut is as of 2003. There were all kinds of things that put them on notice that they should have been looking at, that should have been tested, and should have been testing it. So the issue is not about what are the testing protocols and how do you remediate this. That's the, you know, that's the remedy. But what's actionable here is that, and that we have stated, and in the motion to dismiss phase, you have to take all the facts alleged towards us, that prison officials with deliberate indifference exposed the inmates at Garner to levels of an environmental toxin, a carcinogen, known carcinogen, that posed an unreasonable risk of serious damage to their future health. So the State wants to, you know, get into Taylor. Well, and in fact, Taylor is useful for the fact that the issue there is not like Helling, which I just stated, which is our constitutional right. But the right in Taylor was about, best defined, I'm reading from the case, as an incarcerated person's right to a proper implementation of adequate suicide prevention protocols. It has nothing to do with the fact that an inmate is involuntarily exposed to a known carcinogen. And point of fact, Your Honor, there is also a State case pending right now that we have as a class action for the retirees and the medical staff, and the name plaintiff is the first warden at Garner, because the State has not taken this seriously. And with respect to the protocol that they talk about, the new testing protocol that resolves this, it doesn't, and two things. One, before Judge Arterton, we agreed that while it was in front of her, it wasn't going to be part of the record for purposes of this appeal. And separately, what we know is that in 2017, they tested and the results were as bad as they were in 2013. And we have allegations. We have witnesses that will talk about the State manipulating the testing. But they then put in another system that was inadequate. So the perspective piece here, which gets us around the sovereign immunity, in fact exists. But it's particularly the definition of an unreasonable level of the carcinogen. I mean, I know when I've sat in the Ninth Circuit, there are all sorts of referenda saying the people of the State of California have determined that coffee, for example, and many other things. But there are degrees. I mean, Radon is everywhere. What makes it? Should they not have built the prisons? No, that's not what I'm saying. I'm not saying that they're entitled to a Radon-free prison. But what you are entitled to is that the levels of Radon should not be so high that you are subject to a future health risk. And that's what happened here. We're not. The EPA action level is 4.0 picures per liter. WHO is 3.0. The levels here were 20. The medical unit was 24.0. The warden's office was 10.0. I mean, the factual equivalent of not secondhand smoke, but smoking either a pack of cigarettes a day to two-and-a-half packs of cigarettes a day. That's what they were exposed to. And so the State is misconstruing both Judge Arnoldson's decision as well as the claim that we're making, which is all of that information was in the complaint to lay out functionally, are you looking at deliberate indifference? But What if there are indications that, for example, in other countries, this particular level of radiation might not be regarded as unreasonable and requiring action?  The World Health Organization, Your Honor, has a lower level than we do. I know what the World Health Organization does, but they cite other countries. I believe that, at least my law clerk tells me, that they have a list of countries in which the action level goes from 5. I'm sorry if I won't list the particular Well, thankfully we live in Arsenogen, but from 5 to 20, let me just get it exactly There's also a difference between From 5.4 in Israel and Ireland to 27 in Switzerland, which is higher But there's a, Your Honor, there's also a difference between, so inmates live there 24-7. It's their home. And in the United States, the EPA says that you cannot have a home, you cannot sell a home with radon greater than 4.0 picures per liter. And, you know, the, and again, I think that Taylor is sort of misciting where we are because the functional issue that Judge Arlerton found is that there's a constitutional right established in Helling that goes through to Levanti, which is asbestos by the Second Circuit, which has not been overturned, that states that you cannot expose, you cannot involuntarily expose prisoners to an environmental hazard at levels that are going to create an unreasonable risk of serious medical harm. And that's exactly what's going on here. You know, the other thing with respect to the issue about having an identical, a quote-unquote identical case is What exactly did the EPA say? That it was, was it cost effective to reduce the number, the amount of radon in homes or that over a long period of time, it causes an unreasonable risk depending upon whether the occupant of the home smoked or didn't smoke? I mean, I don't know. Which is why you can't sell a house if the, if it radon tests above 4.0 without putting in a remediation or making that part of what your deal is. In Connecticut? Is that in Connecticut or all over? Excuse me? Is that in Connecticut or is that all over? No, that's actually, certainly in Connecticut, but it may, I think it's probably a national law at this time. Because this is in fact, it's the second leading cause of lung cancer. It's a, this is, this is a serious, this is a serious thing. And the, you know, which is why in 1988, when they were building the Federal prison in Pennsylvania, which has high radon levels, they tested for it in advance and they constructed the prison to remediate the problem. So then it didn't happen. And it doesn't happen in the future. One of the, with respect to their claim that you have to have an identical case on point, again, I think this is in the line of Howling, it's in the line of Labonte. Labonte, in fact, sort of overturns a district court who just focuses on asbestos and says, no, this is about, you know, are you creating something that's posing a serious health risk? But in those cases, the risk was, was known to be present in the prison. You do have to come to terms with Taylor's statement that there's no, no precedent, at least at the time of Taylor, that detention facilities have to implement procedures to identify their vulnerable inmates. And I'm asking you, where is there any precedent? May I just finish my question? I apologize, Your Honor. Where is there any precedent that says that you have to test for hazards that are known to be prevalent in your area? Not in your prison, in your area. So, again. Is there a precedent? Again, the issue is not about the testing. Tell me if there's precedent for that, and then you can, of course, explain why that's not your case. Well, if you see friable asbestos dropping down, you know that you've got a carcinogen and you address it. Well, with respect to the case. Prior to 2013, I don't understand that to be the case here. There's nothing alleged to that effect. No, I'm just trying to see whether in assessing the dismissal or the requested dismissal, we distinguish between pre-2013 and post-2013. So, again, is there a case that says that you are constitutionally required to test when you know that a hazard is prevalent in the area? And, Your Honor, this is at the motion to dismiss stage, which takes all the facts that we allege to be accurate, and it's not just about testing. We're claiming that they, in fact, knew. They knew when they built it. They knew afterwards. They then were reminded, oh, we've got a problem here, and chose to do nothing for it, all the way until 10 years after when they should have tested the school, and there's an ongoing problem. So. So. This is against a number of people, and I'm not sure who of them had construction responsibility. Your Honor, it may very well be. We haven't had any discovery in this case at this juncture. But you need a good-faith basis. And I do have a good-faith basis. When you say that they knew and built it anyway, who are the defendants who you charge with that? Because this was because there is, when in 1988 Radon was added to the Toxic Substance Control, there was a map, they literally mapped, EPA mapped the United States, right? And Newtown is in a level one district. It's not all of Connecticut. It's a part of Connecticut. And it is above 5.0 picures per liter. So it's above the actionable level that the EPA set. They knew they were building it in a place where you've got to look at the issue and didn't. And the, with respect to everything else, Your Honor, it came from newspaper articles, different kinds of things that were going on. When we knew the water, they knew the water, the ruminant levels were so high. And one of the things that happens is that Radon, like when you run a shower or you cook. All I wanted to know was whether you had any precedent. Again, Your Honor, you know, Taylor is about. I think you've had time. If you want to just answer Judge Rodgers. The concern I have is that Taylor has put us off track because it's not about the testing and the protocols. And Taylor is about suicide prevention where the inmates are voluntarily, you know, acting up. That's not the situation here. And that's why, I mean, we, I don't know whether at the end of the day we're going to be able to prove everything or not, but what the Court did was take us back to Helling in 1993 and say, therefore, there was exposure to high levels of Radon. And the State won't even concede Radon is toxic. Sotomayor, holding in Helling is that you don't have to wait until the health problems manifest themselves to have. So, you know, all these cases are fact specific. But thank you for trying to answer my question. Thank you very much. All right, counsel, you've reserved some time. And we'll limit you to that time. Thank you, Your Honor. The plaintiffs do not sue under a statute or an administrative provision, the Toxic Control Substances Act. They don't do any of that. They bring a very specific claim for a constitutional right being violated and seek damages. Does the Toxic Control Substances Act provide for a cause of action? Not to my knowledge, Your Honor. They, to defeat immunity for a constitutional right, they need a constitutional precedent. I would just point out, Your Honors, to the decision subsided by the Seventh Circuit and Judge Posner. Their radium in the water, far in excess, that's the actual words in the opinion, I believe, far in excess of EPA, PICL levels, not only was there not an immunity issue, dismissed. Your remedy is not under the Eighth Amendment. That's not what the Eighth Amendment entitles you to in prison. Also, with Your Honor's question from my sister counsel on Helling, the construction of prisons in this case has been dismissed as immune by Judge Arderton in this case. She determined that everything before Helling is those defendants, that conduct, there's qualified immunity. The only issue is the testing and the remediation protocols. That's the scope of the right here. At the end of the day, this is about whether it's beyond debate. We respect that. We've had quite vigorous debate here for several years. Thank you. Should I ask you again what's the reason that this case can't be settled? I'm sorry, Your Honor? What's the reason that in terms of going forward it can't be settled? Very well could be, Your Honor, on the injunctive claims. Yeah. I mean, that could be a possibility. We have a testing directive. I think there's a dispute over whether they're happy with that or not. But we have a widespread rate on testing directive in place at the moment that the commissioner, the previous and the current commissioner are committed to. Thanks very much. Thank you, Your Honor. We'll reserve the decision.